IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:04-CV-168-H(2)

ADAM L. PERKINS,

    Plaintiff,

v.

**ORDER**

TOWN OF PRINCEVILLE and the
PRINCEVILLE POLICE DEPARTMENT,

    Defendants.

This matter is before the court on the parties' cross-motions for summary judgment [DE #31, 33, 34]. Appropriate responses and replies have been submitted, and the time for further filings has expired. This matter is ripe for adjudication.

## STATEMENT OF THE CASE

This case involves allegations of religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff claims that defendants, his former employers, refused to rehire him as a full-time police officer due to his religious convictions, which prevented him from working between sunset on Friday and sunset on Saturday.

## STATEMENT OF THE FACTS

Plaintiff Adam Perkins began working as a patrol officer for

the Princeville Police Department in July 2000. Plaintiff's position was probationary, authorized under temporary funding provided to the Town of Princeville by the Federal Emergency Management Agency ("FEMA"). The Town hired a second temporary FEMA-funded officer during the summer of 2000, bringing the number of full-time officers employed by Town to six. On June 30, 2001, after the Town's FEMA funding ran out and requests for additional funds were denied, the Town laid off two police officers, including plaintiff. As of July 1, 2001, the Princeville Police Department had four full-time police officers.

In early August 2001, after the resignation of the former Chief of Police, the Town had one vacant full-time police officer position. Plaintiff claims that Police Chief Gary Foxx interviewed him for this position on or about September 26, 2001. The following week, plaintiff learned that Officer Erica Ennis had been selected to fill the vacant position.[1] In October 2001, plaintiff claims that Chief Foxx told him that he was not hired for this position because he was unable to work weekends.

Another officer resigned from the Department in November 2001. Plaintiff claims that Chief Foxx interviewed him for this second vacancy on November 8, 2001. Plaintiff further alleges that during this interview Chief Foxx insinuated that plaintiff would be

---

[1] Officer Ennis was the second FEMA-funded temporary employee mentioned above.

2

offered the job if he agreed to work on Friday nights and Saturdays. Defendants vigorously dispute these claims. They contend that plaintiff did not submit an application, was not interviewed, and was not considered for any position in November 2001. Chief Foxx claims that he never received an application from plaintiff for this position and never interviewed plaintiff for the position. Moreover, defendants point out (and plaintiff does not seriously dispute) that the decision maker, Town Manager Bobby Hopkins, never considered plaintiff for the November vacancy.[2] In the light most favorable to plaintiff, the evidence suggests that Chief Foxx had a conversation with plaintiff in November 2001 regarding the officer's departure and the resulting vacancy, but that plaintiff was never considered for the vacancy.

## COURT'S DISCUSSION

### I. Standard of Review

A. Summary Judgment pursuant to Fed. R. Civ. P. 56

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a

---

[2] Plaintiff attempts to avoid this issue by pointing to evidence that Hopkins knew about the *September* interview. (See Pl.'s Resp. to Def.'s Mot. Summ. J. 9-12 [DE #45].) This fact is not contested by defendants. Plaintiff also appears to contend that Hopkins' failure to dispute the claim that there were two interviews in a November 20, 2001 letter to plaintiff constitutes an admission of this fact. (See Pl.'s Resp. To Def.'s Mem. 5, Exh. 1 at 3-4 [DE #62].)

3

matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  As this court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues.  Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993).  Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial.  Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson, 477 U.S. at 247-48.  Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion.  Faircloth, 837 F. Supp. at 125.

4

**II. Analysis**

**A. Defendant Princeville Police Department**

Under North Carolina law, the Princeville Police Department is not a "person" and, therefore, lacks the capacity to be sued. See Moore v. City of Asheville, NC, 290 F.Supp.2d 664 (W.D.N.C. 2003); Coleman v. Cooper, 366 S.E.2d 2, 5 (N.C. Ct. App. 1988) (finding that no statute authorizes suit against a North Carolina police department). Accordingly, plaintiff's claim against Princeville Police Department is DISMISSED.

**B. Plaintiff's Prima Facie Case**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of refusal to hire because of religion under Title VII, a prospective employee must show that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed the prospective employer of his belief; and (3) the employer refused to hire him because of his inability to fulfill the job requirement. Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996) (setting forth the standard in the context of discharge from employment); Sutton v.

5

Providence St. Joseph Medical Center, 192 F.3d 826, 830 (9th Cir. 1999) (setting forth the standard in the context of a failure to hire).

The court assumes, without deciding, that plaintiff has forecast enough evidence to get to the jury on each of the three elements of the prima facie case with respect to the Town's failure to hire him in September. As for the alleged November interview and failure to hire, see Compl. ¶¶ 32-33, the court finds a complete absence of evidence to create a triable issue with respect to the third element of the prima facie case. There is no evidence that the decision maker, Town Manager Bobby Hopkins, considered plaintiff for the November opening, much less that he refused to hire him for any reason, incendiary or otherwise. Defendants' motion for summary judgment is therefore GRANTED with respect to the alleged interview and refusal to hire in November 2001.

**C. Undue Hardship Analysis**

The term "religion" as used in Title VII includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j). Thus, once a plaintiff has established a prima facie case of religious discrimination, the burden shifts to the employer to show that it was "unable to

6

reasonably accommodate" the plaintiff's religious observance without undue hardship on the employer's business. Id.; Ansonia Bd. Of Educ. v. Philbrook, 479 U.S. 60, 68 (1986); EEOC v. Ithaca Industries, Inc., 849 F.2d 116 (4th Cir. 1988); Weber v. Roadway Express, Inc., 199 F.3d 270, 273 (5th Cir. 2000). The employer must show that it would have been forced "to bear more than a de minimis cost" to accommodate an employee's religious beliefs. Trans World Airlines v. Hardison, 432 U.S. 63, 84 n.15 (1977). "De minimis costs" include both monetary costs and other burdens on the employer's ability to conduct its business. Id.

Plaintiff proposed four alternatives through which, he claims, the Town of Princeville could have accommodated his religious observance:

> (1) assign permanent shifts, moving away from a neutral rotating shifts schedule that spread the burden of Friday night and Saturday day shifts among available officers;
>
> (2) allow reserve officers to cover plaintiff's shifts;
>
> (3) allow plaintiff to swap shifts with other officers; and/or
>
> (4) allow plaintiff to work every weekend, exclusive of times he was prevented from working due to his religious observance.

The Town argues that these four proposed accommodations were unreasonable and would have constituted an undue hardship.

It is undisputed that at the time defendant refused to hire plaintiff in September 2001 the Princeville Police Department had

7

only three full-time police officers (plaintiff would have been the fourth).[3] It is also beyond dispute that the Town attempted to provide twenty-four hour coverage, seven days a week, and to have two officers on duty at all times, especially during high crime periods including the weekends.[4] Under these circumstances, it would have been impossible for the Town to adopt any of plaintiff's proposed accommodations, or any other "reasonable" accommodation that this court can envision, without requiring at least one of the other three officers to work back-to-back shifts, or relying on unpaid volunteer reserve officers or officers from the Edgecombe County Sheriff's Department to cover shifts.

The law does not require an employer to make such dramatic changes in its operations in order to accommodate a prospective employee's religious observance or practices. Plaintiff's proposed accommodations would have forced the Town to deny the shift preferences of other police officers. The Supreme Court, in Hardison, made it clear that an employer need not go to this extreme.

> Title VII does not contemplate such unequal treatment. . . . It would be anomalous to conclude that by "reasonable accommodation"

---

[3] These circumstances were identical at the time of the alleged second interview and refusal to hire in November 2001.

[4] Defendants have proffered evidence that tends to show that Friday night was the highest crime period. (See Def.'s Suppl. Mem. 3 [DE #53].)

8

> Congress meant that an employer must deny the shift and job preference of some employees . . . in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

Id. at 80-81.

In Beadle v. City of Tampa, 42 F.3d 633 (11th Cir. 1995), the Eleventh Circuit reviewed a case involving alleged religious discrimination in violation of Title VII. The police department in Beadle refused to grant shift exceptions to an employee who could not work on Saturdays due to his religious observance. As in the case at bar, the Tampa Police Department provided around-the-clock service. Even though the department had over nine hundred employees, compared with three or four in the Princeville Police Department, the Eleventh Circuit nevertheless held that to grant shift exceptions would have resulted in greater than de minimis cost to the employer, relying on the Supreme Court's "undue hardship" analysis from Hardison.

The Eleventh Circuit, in Beadle, also noted the importance of courts showing restraint in restructuring employment practices when "the employer's business involves the protection of lives and property." 42 F.3d at 637 (citing United States v. City of Albuquerque, 545 F.2d 110, 114 (10th Cir. 1976)). In at least one other circuit, it has been held that Title VII does not require employers to force employees to trade shifts to accommodate the religious observance of a co-worker. Weber, 199 F.3d at 274 ("The

9

mere possibility of an adverse impact on co-workers . . . is sufficient to constitute an undue hardship.") (citing Hardison, 432 U.S. at 81).

After reviewing the entire record in this case, the court finds as a matter of law that all of the accommodations proposed by plaintiff would have required the Town of Princeville to bear far greater than de minimus costs, resulting in an "undue burden" to the Town. Accordingly, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [DE #31] is GRANTED and plaintiff's motion for summary judgment [DE #33, 34] is DENIED. The clerk is directed to close the case.

This the 19th day of April, 2006.

_____
MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#30